OPINION
Appellant, Lisa Mardis, appeals an order of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of her son, Charles Brown ("Charles"), to appellee, Butler County Children Services Board ("BCCSB"), and divesting her of all parental rights.[1]
On June 4, 1996, appellant gave birth to her son Charles.[2]
That same day, BCCSB filed a complaint in dependency on behalf of Charles and obtained temporary custody of him. The complaint stated, inter alia, that appellant (1) had an extensive history and placements in residential treatment facilities; (2) had a history of depression; (3) was mildly mentally retarded with an IQ of 65; (4) was extremely transient and had moved numerous times; and (5) had consistently failed to participate in several court-ordered services since June 1994. Appellant was granted bi-weekly supervised visitation.
On July 1, 1996, a case plan was filed in the trial court. The plan required appellant to get involved in MRDD services, to participate in parent education classes and the Development of Living Skills ("DLS") program, to attend individual counseling to deal with her depression and anxiety, and to take medication for her depression and anxiety as prescribed by a psychiatrist. The plan also required appellant to undergo a psychological evaluation at the Children's Diagnostic Center ("CDC") and to obtain and maintain stable and suitable housing.
On September 13, 1996, a modified case plan was filed in the trial court. The plan stated in general that appellant had not been complying with the previous plan, and more specifically, that she had failed to (1) follow through with counseling/psychiatric services, and (2) participate in the DLS program.
A semiannual administrative review summary filed on December 6, 1996, stated that appellant had failed to obtain a physical necessary to complete the intake process with MRDD services, had failed to see a psychiatrist and thus was not on the necessary medication for her depression and anxiety, and had failed to follow through with the DLS program. The summary also stated that with regard to appellant's individual counseling for depression and anxiety, appellant had "no-showed" for seven consecutive appointments in August 1996 and that she had not attempted since then to attend counseling.
An adjudication hearing was conducted on January 31, 1997. By judgment entry filed February 10, 1997, the trial court granted permanent custody of Charles to BCCSB, thus divesting appellant of her parental rights. In its entry, the trial court found that appellant could not be expected to provide adequate parental care for Charles within a reasonable amount of time and that Charles could not be placed with any parent within a reasonable period of time.
Appellant timely filed this appeal and raises as her sole assignment of error that the trial court's decision to grant permanent custody of Charles to BCCSB was against the manifest weight of the evidence.
It is well-established that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. "In considering an appeal based upon a claim that judgment was against the manifest weight of the evidence an appellate court must be guided by a presumption of correctness, and cannot substitute its judgment for that of the trial court." In re Mesko (Apr. 24, 1997), Belmont App. No. 95 BA 32, unreported.
Appellant has, however, presented to this court only a partial transcript of the proceedings. The record shows that only one tape of the adjudication hearing was transcribed and presented to this court. As appellant stated in a motion for leave filed in this court in June 1997, "[s]everal items of testimony including that of the Appellant were not transcribed and still are missing from the record."
It is well-established that "[t]he duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record." Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199. This principle is recognized in App.R. 9(B), which states in relevant part that:
 At the time of filing the notice of appeal the appellant, in writing, shall order from the reporter a complete transcript or a transcript of the parts of the proceedings not already on file as the appellant considers necessary for inclusion in the record * * *. * * * If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the weight of the evidence, the appellant shall include in the record a transcript of all evidence relevant to the findings or conclusion.
"When portions of the record necessary for the determination of an assigned error are absent, the reviewing court has nothing to pass on and has no choice but to presume the validity of the trial court's proceedings." Helton v. Helton (1994), 102 Ohio App.3d 733,737. See, also, Ostrander v. Parker Fallis Insulation Co. (1972), 29 Ohio St.2d 72.
In light of the incomplete record before us, we are unable to review an appeal based upon the manifest weight of the evidence. Helton, 102 Ohio App.3d at 737. Even considering only that evidence which was presented in the record on appeal, which includes the case plans, the administrative review summary, and appellant's December 10, 1996 CDC psychological evaluation, we find no reason to sustain appellant's assignment of error. We have already stated what the case plans and the administrative review summary stated about appellant. With regard to appellant's CDC evaluation, it described appellant's psychological functioning as follows:
 This profile is one associated with individuals who are suspicious, angry, and upset, typically about injustices they feel have been done to them. Tangential or loose thoughts are also reflected in her profile as is the potential for ideas of reference or delusions. Ms. Mardis is likely to be hurt by critical comments, and she will tend to read ill will into even the most benign of comments because she is so sensitive to criticism.
 Ms. Mardis' profile is also one associated with poor adjustment to life in general, impulsiveness, and poor judgment. Acting-out potential, often due to reduced impulse control, is also associated with this profile.
 Diagnostically, this profile is fairly evenly divided between individuals who become psychotic and who exhibit a severe personality disorder.
Both in the CDC evaluation report and during the adjudication hearing, Charles Lee, M.D., a psychologist at CDC who evaluated appellant, stated that because she is mildly mentally retarded, appellant would have difficulty providing care for herself and a child. Dr. Lee further stated he had serious reservations about appellant's ability to be an appropriate, independent and reliable caretaker now and in the foreseeable future. Dr. Lee's opinion was based upon appellant's low IQ, her serious test results, her level of depression, and her inability to access mental services in the past.
It is well-established that the trial court is best able to observe the witnesses and use these observations in weighing the credibility of the proffered testimony. Seasons Coal Co.,10 Ohio St.3d at 80. Because of the incomplete record before us, we must presume the validity of the trial court's judgment. Ostrander,29 Ohio St.2d at 74. However, as previously noted, even considering the incomplete record presented to us on appeal, we find no reason to reverse the trial court's decision to grant permanent custody of Charles to BCCSB. Appellant's assignment of error is therefore overruled.
Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.
[1] Richard Brown is Charles' biological father. By judgment entry filed February 10, 1997, Brown was similarly divested of all parental rights. Brown is not a party to this appeal.
[2] The record shows that Charles is appellant's second child. Appellant's first child, Euphemia, was permanently placed in the custody of BCCSB in March 1996.